## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STACY ZEID, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No.: 1:25-cv-04763-JHR |
| v. | Hon.  Jennifer H. Rearden |
| FANDANGO MEDIA, LLC | |
| Defendant. | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT FANDANGO MEDIA, LLC'S
## MOTION TO DISMISS

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................... ii

I.      Introduction ....................................................................................................1

II.     Background .....................................................................................................2

III.    Legal Standards ..............................................................................................5

IV.     Argument ........................................................................................................6

        A.      Fandango's Purchase Flow Violates NYCA and Its Challenge to
                NYCAL's Scope is Without Merit ........................................................6

                1.      NYCAL Applies to Plaintiff's Consumer Transaction – Plaintiff's
                        Purchase Did Not Occur Wholly Outside of New York and
                        Fandango's Purchase Flow Violated NYCAL §25.07 ......................6

                2.      The Plain Language of the NYCAL Does Not Limit Its
                        Application Only to Sales at Venues in New York ...........................9

        B.      Fandango's Drip Pricing Practice Violates Both Prongs of ICFA
                as Both a Deceptive Act and an Unfair Practice ...................................15

                1.      Fandango's Choice of Law Provision is Unenforceable as to
                        Plaintiff's ICFA Claim Because its Application Would Violate a
                        Fundamental Public Policy of Illinois, Which Has a Greater
                        Material Interest than New York ....................................................16

                2.      Plaintiff Adequately Pleads a Deceptive Act Claim Under
                        ICFA...............................................................................................20

                3.      Plaintiff Adequately Pleads an Unfair Practice Claim Under
                        ICFA...............................................................................................23

                4.      The Voluntary Payment Doctrine Does Not Bar Plaintiff's
                        Claims.............................................................................................25

V.      Conclusion ....................................................................................................26

Certificate of Compliance With Word-Count Limit ....................................................28

Index of Exhibits .........................................................................................................29

# TABLE OF AUTHORITIES

<u>Cases</u>

*10012 Holdings, Inc. v. Sentinel Ins. Co.*,
 21 F.4th 216 (2d Cir. 2021) .......................................................................6

*700 Camp St., LLC v. Mt. Hawley Ins. Co.*,
 2024 U.S. Dist. LEXIS 175266 (S.D.N.Y. Sept. 26, 2024)...................................16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).......................................................................................5

*Awad and Mannion v. Fandango Media, LLC*,
 No. 610563/2024 (N.Y. Sup. Ct. Nassau Cnty, Aug. 30, 2024)...................................4

*Berryman v. Reading International, Inc.*,
 763 F.Supp.3d 596 (S.D.N.Y. 2025)..................................................7, 23, 25

*BDO USA, P.C. v. Rojas*,
 2024 U.S. Dist. LEXIS 140932 (S.D.N.Y. Aug. 8, 2024) ...........................................6

*Bown v. SBC Commc'ns., Inc.*,
 2007 U.S. Dist. LEXIS 14790 (S.D. Ill. Mar. 1, 2007) .............................................26

*Brighton v. Lutheran Church-Missouri Synod*,
 2013 U.S. Dist. LEXIS 198211 (C.D. Cal. Feb. 1, 2013)...........................................17

*Brink's Glob. Servs. USA, Inc. v. Bonita Pearl, Inc.*,
 2025 U.S. Dist. LEXIS 112089 (S.D.N.Y. June 12, 2025)..........................................19

*Camasta v. Jos. A. Bank, Clothiers, Inc.*,
 2013 U.S. Dist. LEXIS 16509 (N.D. Ill. Feb. 7, 2013) ..............................................21

*Cambridge Capital, LLC v. Ruby Has, LLC*,
 675 F.Supp.3d 363 (S.D.N.Y. 2023).......................................................................17

*Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*,
 208 F.Supp.3d 494 (E.D.N.Y. 2016) .......................................................................19

*Cardonet, Inc. v. IBM*,
 2007 U.S. Dist. LEXIS 14519 (N.D. Cal. Feb. 14, 2007) ..........................................18

*Charles v. Color Factory, LLC*,
 2024 WL 1693236 (S.D.N.Y. Apr. 19, 2024)...........................................................25

*Coscarelli v. Esquared Hosp., LLC,*
   364 F.Supp.3d 207 (S.D.N.Y. 2019)..................................................................19

*Cruz v. Fxdirectdealer, LLC,*
   720 F.3d 115 (2d Cir. 2013)..............................................................................13

*Duhl v. Nash Realty, Inc.,*
   102 Ill.App.3d 483 (1st Dist. 1981) ..................................................................18

*Frias v. City Winery N.Y., LLC,*
   2024 NY Slip Op 33738(U) (N.Y. Sup. Ct. Oct. 11, 2024)................................8

*Gladsky v. Glen Cove,*
   563 N.Y.S.2d 842 (App. Div. 1991) ...................................................................9

*Hemlock Semiconductor Pte. Ltd. v. Jinglong Indus. & Commerce Group Co., Ltd.,*
   2017 NYLJ LEXIS 1199 (N.Y. Sup. Ct., N.Y. Cnty. May 11, 2017) ................22

*Heng Guo Jin v. Han Sung Sikpoom Trading Corp.,*
   2015 U.S. Dist. LEXIS 125961 (E.D.N.Y. Sept. 18, 2015)................................14

*Illinois v. CMK Invs., Inc.,*
   2014 U.S. Dist. LEXIS 169920 (N.D. Ill. Dec. 9, 2014)...................................21

*In re Presson,*
   2025 U.S. Dist. LEXIS 38731 (S.D.N.Y. Mar. 4, 2025) .....................................7

*Kahn v. Walmart, Inc.,*
   107 F.4th 585 (7th Cir. 2024) .........................................................21, 23, 24, 25, 26

*Keating v. City of Chicago,*
   2013 IL App (1st) 112559-U ..............................................................................25

*LG Capital Funding, LLC v. Exeled Holdings, Inc.,*
   2024 U.S. Dist. LEXIS 43867 (S.D.N.Y. Mar. 13, 2024) .............................16, 17

*Lynch v. City of New York,*
   952 F.3d 67 (2d Cir. 2020)..................................................................................5

*Madrigal v. Ticketmaster, LLC,*
   2025 U.S. Dist. LEXIS 130581 (C.D. Cal. July 8, 2025)..................................26

*Madrigal v. Ticketmaster, LLC,*
   No. CV 25-2375-JFW(KSx) (C.D. Cal. May 23, 205)........................................26

*Mannion v. Fandango Media, LLC*,
   No. 23-cv-11150 (S.D.N.Y.) ................................................................4

*McVetty v. Tomton N. Am. Inc.*,
   2021 U.S. Dist. LEXIS 47922 (S.D.N.Y. Mar. 13, 2021) ...........................10

*Medtronic, Inc. v. Walland*,
   2021 U.S. Dist. LEXIS 172235 (S.D.N.Y. Sept. 10, 2021)..................17, 20

*Midwest Enterprises, Inc. v. Generac Corp.*,
   1991 U.S. Dist. LEXIS 12016 (N.D. Ill. Aug. 27, 1991)......................17, 19

*Ministers & Missionaries Benefit Bd. V. Snow*,
   26 N.Y.3d 466 (2015) ...................................................................8, 14, 16

*Mubascher Ahmed v. Autotrader.com, Inc.*,
   2018 U.S. Dist. LEXIS 251106 (N.D. Ill. Mar. 28, 2018)....................24-25

*New Vision Unlimited, LLC v. Glasses USA, Inc.*,
   2023 U.S. Dist. LEXIS 86992 (S.D. Fla. May 17, 2023) .....................22, 23

*People v. Aviles*,
   148 N.Y.S.3d 659 (Crim. Ct. 2021)......................................................10

*People v. Concert Connection, Ltd.*,
   629 N.Y.S.2d 254 (App. Div. 2d Dep't. 1995).....................................13, 14

*People v. Viviani*,
   145 N.Y.S.3d 512 (2021).......................................................................9

*People v. Weston*,
   119 N.Y.S.3d 841 (Crim. Ct. 2020).......................................................11

*Petri v. Gatlin*,
   997 F. Supp. 956 (N.D. Ill. 1997).........................................................18

*Petroleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*,
   51 F.4th 456 (2d Cir. 2022) ................................................................16

*Polk v. DelGatto, Inc.*,
   2021 U.S. Dist. LEXIS 137764 (S.D.N.Y. July 23, 2021) .........................13

*Pultz v. Economakis*,
   830 N.Y.S.2d 101 (App. Div. 2007).......................................................15

*Randels v. Best Real Estate*,
    243 Ill.App.3d 801 (2nd Dist. 1993)..........................................................................18

*Reeves v. Fandango Media, LLC*,
    2025 Cal. Super. LEXIS 28090 (Cal. Sup. Ct. Apr. 8, 2025)..............................21, 22

*Robinson v. Toyota Motor Credit Corp.*,
    201 Ill.2d 403 (2002) ..............................................................................................23, 24

*Sandoval v. Uphold HQ, Inc.*,
    2024 U.S. Dist. LEXIS 55045 (S.D.N.Y. Mar. 27, 2024) ...........................................19

*Sava v. 21st Century Spirits, LLC*,
    2024 U.S. Dist. LEXIS 111496 (N.D. Ill. June 25, 2024) ...........................................15

*Spellman's Marine, Inc. v. HC Composites, L.L.C.*,
    178 N.Y.S.3d 379 (Sup. Ct. 2022)................................................................................10

*Summerville v. Gotham Comedy Found., Inc.*,
    765 F.Supp.3d 293 (S.D.N.Y. 2025).........................................................5, 8, 25, 26

*Theroux v. Reilly*,
    771 N.Y.S.2d 43, 803 N.E.2d 364 (2003)......................................................................9

*United States v. Moseley*,
    980 F.3d 9 (2d Cir. 2020)..............................................................................................17

*Washington v. Hyatt Hotels Corp.*,
    2020 U.S. Dist. LEXIS 101118 (N.D. Ill. June 9, 2020) .............................................22

*Williams-Ellis v. Mario Tricoci Hair Salons & Day Spas*,
    2007 U.S. Dist. LEXIS 80954 (N.D. Ill. Nov. 1, 2007)...............................................21

*Woodling v. Garrett Corp.*,
    813 F.2d 543 (2d Cir. 1987)............................................................................................5

*Wright v. Publrs. Clearing House, Inc.*,
    439 F.Supp.3d 102 (E.D.N.Y. 2020) ............................................................................13

Statutes

815 ILCS 505/10c............................................................................................................19

NYCAL § 25.01................................................................................................................11

NYCAL § 25.03...........................................................................................................13, 25

NYCAL 25.07.................................................................................................1, 4, 8, 9, 10

NY GBL § 349(a) ...............................................................................................20

<u>Federal Register</u>

88 Fed. Reg. 77420 ............................................................................................22

88 Fed. Reg. 77432 ..............................................................................................3

90 Fed. Reg. 2066 .............................................................................................22

90 Fed. Reg. 2067 ................................................................................................3

90 Fed. Reg. 2072 ................................................................................................3

<u>Other Authorities</u>

Ill. Const. 1970, art. 1. § 12 ...............................................................................18

Ticketmaster, We're All In: How All In Prices Make Buying Tickets Easer,
     May 8, 2025, https://blog.ticketmaster.com/all-in-pricing-explained/ ........................4

## I.    Introduction

Fandango's purchase flow uses a deceptive and unfair "drip pricing" sales practice that initially displays a lower movie ticket price, then increases the cost Fandango ultimately charges at checkout. ECF No. 1 ("Compl."), ¶¶ 27-45. Numerous studies cited by the Federal Trade Commission ("FTC") found drip pricing is deceptive and unfair to consumers and compels consumers to pay higher prices than they otherwise would. *Id.*, ¶¶ 13-26. Further, numerous decisions have denied motions to dismiss, crediting allegations that purchase flows similar to Fandango's are inherently deceptive and unfair.

Despite these authorities, Fandango attempts to skirt long-standing prohibitions on its actions with its legal gambit. Fandango used its deceptive and unfair drip pricing practice to sell tickets throughout the country and chose to include a broad New York choice of law provision in the terms and conditions of those sales. *Id.*, ¶ 12. Fandango is now attempting to avoid the consequences of its own decision to apply New York law - which includes the New York Arts & Cultural Affairs Law ("NYCAL"), a statute explicitly prohibiting this practice – by inferring a geographic limitation   the legislature did not impose. Nothing in NYCAL § 25.07 limits the application of that section to ticket sales at venues in New York. Fandango's attempt to extend the NYCAL's definition of the term "resale," which includes a geographic limit, is inapplicable to the facts of this case, improper, and should be rejected. *See* NYCAL § 25.07.

Additionally, Fandango's effort to prevent Plaintiff and the putative Class from bringing Illinois Consumer Fraud Act ("ICFA") claims is an improper attempt to create a liability shield to protect its wrongful conduct from review under statutory consumer fraud laws. Allowing Fandango's liability shield gambit would reward Fandango's wrongdoing and strip consumers across the country including the putative Illinois class of their statutory rights and remedies. New

York courts reject the proposition that a party can use a choice of law clause as an immunity clause, instead recognizing public policy exceptions to enforcement. As set forth *infra*, allowing Fandango to effectively immunize itself from liability for its bait and switch pricing scheme would violate the Illinois Constitutional principle that every harm have a remedy and the fundamental Illinois public policy that consumers cannot waive the rights and remedies afforded by the ICFA.

As demonstrated below and as recently held by courts, Fandango's use of drip pricing violates state consumer protection laws, including the ICFA, and Fandango's voluntary payment doctrine defense is inapplicable.

## II.    Background

Fandango implements a deceptive and unfair purchase flow to sell tickets through its online purchase platform. *See generally* Compl. Specifically, consumers seeking to purchase movie tickets through Fandango.com are shown one price for those tickets, only to discover at the end of the transaction they must pay a higher price because Fandango charges a mandatory convenience fee. *Id.*, ¶¶ 27-33. This bait and switch pricing scheme, referred to as "drip pricing," is used by Defendant to sell tickets at higher prices than advertised. *Id.*, ¶¶ 1-6, 13-33, 38-45. Consumers are lured further into the transaction with one lower advertised price and have no way of knowing what amount in fees will be added to that advertised price or how much the total cost will be once those fees are added. *Id.* Thus, even consumers who have purchased from Fandango previously have no way of knowing the amount of any fee(s) that will be added at the very end of the transaction.

Numerous consumer-based studies and the FTC have found junk fees, like those imposed by Fandango, damage consumers. *Id.*, ¶¶ 2, 5-6, 13-26. Drip pricing tactics mislead consumers into initially believing they will pay a lower cost for tickets, causing them to invest time and effort

in the transaction so they are reluctant to cancel when the higher price is revealed at the end of the purchase process. *Id.* These practices make it harder for consumers to comparison shop and lead to higher prices and increased search costs. *Id.* Advertising deceptively low prices at the outset of a transaction, only to reveal a higher price with previously hidden fees at the end, has long been prohibited by consumer protection laws broadly designed to deter deceptive and unfair business practices. However, as companies like Fandango continue to flout such laws, some regulators, including the FTC have taken further action to explicitly address these practices. *Id.*, ¶ 2, n.2 (noting in its 2023 proposed rule to combat "junk fees," FTC observed such practices "are already unlawful under Section 5 of the FTC Act" (quoting 88 Fed. Reg. 77420, 77437)).

In 2023, the FTC described its long-standing position that "[p]ricing structures that do not initially disclose the total cost of a good or service[, but instead advertise a lower cost to consumers that is ultimately inflated by mandatory charges] are deceptive even if the total cost is disclosed at some point during the transaction." 88 Fed. Reg. at 77432 (explaining such "misleading door openers" are deceptive "because they lead consumers to believe that the cost for the good or service is lower than it actually is—put another way, the advertised good or service is not actually attainable for the quoted price"). The FTC further observed "numerous courts have recognized it is a violation of the FTC Act if a consumer's first contact is induced through deception, even if the truth is clarified prior to purchase." *Id.* Although the FTC's final rule expressly applies to live-event ticketing and short-term lodging, the FTC made it clear that substantially similar practices in other industries are equally deceptive and harmful to consumers. Compl., ¶ 25 (citing 90 Fed. Reg. 2066); *see also, e.g.*, 90 Fed. Reg. at 2072 (indicating FTC would continue to "address unfair and deceptive pricing practices in other industries using its existing section 5 authority"); 90 Fed. Reg. at 2067 (describing drip pricing as "a quintessential example of bait-and-switch pricing" and

3

observing "[b]ehavioral and economic research explains that piecemeal numbers and explanations cannot cure the deception or mitigate the harms to consumers when businesses employ these pricing tactics").

New York has also acted to explicitly curb these abuses.  Effective August 29, 2022, New York enacted the Arts & Cultural Affairs Law § 25.07(4), providing:

> Every operator or operator's agent of a place of entertainment … or platform that facilitates the sale or resale of tickets shall disclose the total cost of the ticket, **inclusive of all ancillary fees that must be paid in order to purchase the ticket**, **and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge** to the purchase. Such disclosure of the total cost and fees shall be displayed in the ticket listing *prior to the ticket being selected for purchase*. … **The price of the ticket shall not increase during the purchase process…**.

*Id.* (emphasis added).

In light of these actions, some ticket sellers have changed their sales practices to conform with laws prohibiting drip pricing.[1] Yet, Fandango persists in its flouting such laws. Only in 2024, after being threatened with the prospect of a nationwide class action, did Fandango agree to modify its behavior prior to litigating any motion to dismiss, but only with respect to venues located in New York State. *See Mannion v. Fandango Media, LLC*, No. 23-cv-11150 (S.D.N.Y.) (putative nationwide class action filed Dec. 22, 2023); *Awad and Mannion v. Fandango Media, LLC*, No. 610563/2024, Doc. No. 5 (Class Action Settlement Agreement) (N.Y. Sup. Ct. Nassau Cnty, Aug. 30, 2024) Ex. A and B. This has resulted in most Fandango.com consumers still being subject to the deceptive purchase flow, while those shopping exclusively for tickets at New York venues are not. Compl., ¶¶ 34-35. Accordingly, Fandango's deceptive and unfair acts continue to impact

---

[1] For example, Ticketmaster publicly announced it has changed its purchase flow to "all in pricing" nationwide as of May 12, 2025.  *See* Ticketmaster, We're All In: How All In Prices Make Buying Tickets Easier, May 8, 2025, *available at* https://blog.ticketmaster.com/all-in-pricing-explained/.

consumers across the country, *including consumers in New York* who purchase tickets to venues outside New York, including for example at theaters in New Jersey or Pennsylvania, who are still subject to Fandango's pricing practices of seeing one lower price up front, only to be shown a higher actual price at the very end of their transaction. *Id.*, ¶¶ 36-37.

## III.    Legal Standards

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* However, "a complaint does not need detailed factual allegations to survive a motion to dismiss." *Summerville v. Gotham Comedy Found., Inc.*, 765 F. Supp. 3d 293, 299 (S.D.N.Y. 2025) .

On a Rule 12(b)(6) motion, "the court's task is … not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "[T]he Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor." *Summerville*, 765 F. Supp. 3d at 301 (citing *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).

When sitting in diversity, the Court "look[s] to the choice-of-law rules of New York to determine whether and to what extent the parties' contractual choice should be honored." *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987). "In construing New York law," courts "are bound by the law of New York as interpreted by the New York Court of Appeals, and [] consider the language of state intermediate appellate courts to be helpful indicators of how the

state's highest court would rule." *See 10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216, 221 (2d Cir. 2021). The Court is "bound to follow the Second Circuit's interpretation of New York law unless and until it is overruled by the Second Circuit itself or it is undermined by 'a more recent decision regarding New York law from the New York Court of Appeals.'" *BDO USA, P.C. v. Rojas*, 2024 U.S. Dist. LEXIS 140932, at *24 (S.D.N.Y. Aug. 8, 2024).

## IV.    Argument

### A.  Fandango's Purchase Flow Violates NYCAL And Its Challenge To NYCAL's Scope Is Without Merit.

Fandango admits it chose to apply New York law broadly to its interactions with consumers. *See* ECF No. 9 at 9-10. Having affirmatively done so, Fandango cannot now avoid Plaintiff's claim that Fandango's purchase process violates NYCAL. In a footnote, Fandango makes a weak attempt to suggest its "Illinois purchase flow also complies with the NYCAL's requirement that the total cost and fees be displayed prior to the ticket being selected for purchase." ECF No. 9 at 2, n.1. However, Fandango ignores NYCAL's plain language and several recent decisions with similar claims as Plaintiff's under NYCAL § 25.07 that survived motions to dismiss. Rather than arguing the merits of Plaintiff's claim because Fandango cannot realistically contest its blatant violation of NYCAL § 25.07, Fandango instead seeks to avoid the law entirely. Fandango, however, cannot escape its decision to impose New York law on its customers, nor should it be allowed to rewrite NYCAL § 25.07 to inject limits to its reach, where none exist.

### 1.  NYCAL Applies to Plaintiff's Consumer Transaction - Plaintiff's Purchase Did Not Occur Wholly Outside of New York and Fandango's Purchase Flow Violated NYCAL §25.07.

Fandango *does not dispute its New York choice of law provision is enforceable* as to its conduct under Count I. In fact, Fandango vigorously argues its choice of law clause "expressly covers . . . the 'relationship between' Plaintiff and Fandango." ECF No. 9 at 10; *see also id.* at 16

6

("Fandango's choice of law clause is broad: it calls for the application of New York law to *both* "[t]he Terms and Policies *and* the relationship between you and us." (citing Compl. ¶ 12 (emphasis added by Fandango)). Thus, application of New York substantive law, including statutory law, is consistent with the parties' agreement.

Initially, Fandango makes a halfhearted argument that whether or not NYCAL applies, its website complies with the statute because it displays the ticket price before checkout is completed. *See* ECF No. 9 at 2, n.1. Notably missing from Fandango's review is that its ticket price initially shown to Plaintiff increases during the purchase flow when Fandango adds a previously undisclosed mandatory convenience fee to the ticket price at checkout, in direct violation of NYCAL. Fandango displayed a lower ticket price to Plaintiff after she selected seats for a movie. Compl., ¶¶ 29-30. Fandango then required Plaintiff to click through two screens before making it to a checkout page that for the first time in the purchase flow identified a mandatory convenience fee that increased the cost of the ticket. *Id.*, ¶¶ 30-32.

Numerous courts have recently held that similar drip pricing schemes violate § 25.07 of the NYCAL. *See Berryman v. Reading International, Inc*., 763 F. Supp. 3d 596 (S.D.N.Y. 2025) (rejecting dismissal where plaintiff alleged defendant "violated the NYACAL by disclosing the $2.19 per-ticket service charge only at the end of the ticket-purchasing process, *after* she had selected the ticket for purchase," observing "NYACAL requires that the 'disclosure of the total cost and fees shall be displayed in the ticket listing *prior to the ticket being selected for purchase*' and that '[t]he price of the ticket shall *not increase during the purchase process*'" (emphasis in the original)); *see also In re Presson*, 2025 U.S. Dist. LEXIS 38731 (S.D.N.Y. Mar. 4, 2025) (finding plaintiff "plausibly alleged that Alamo's website violated the statute" where he "allege[d] that the convenience fee was disclosed for the first time on the Checkout page—*after* he had selected his

tickets for purchase"); *Summerville v. Gotham Comedy Found., Inc.*, 765 F. Supp. 3d 293, 301 (S.D.N.Y. Feb. 24, 2025) (denying motion to dismiss NYCAL claims involving failure to "disclose the total cost of a ticket, inclusive of all ancillary fees after the ticket was selected;" recognizing "in 2022, the ACAL added the requirements that operators disclose the total cost of ticket '*prior to the ticket being selected for purchase*'") (emphasis in original.)

The sole case Fandango cites in its footnote argument, *Frias v. City Winery N.Y., LLC*, 2024 NY Slip Op 33738(U) (N.Y. Sup. Ct. Oct. 11, 2024), is an outlier and distinguishable. In *Frias*, as soon as a customer clicked on a specific seat in the seating chart, a popup immediately appeared disclosing a per-ticket "Ticket Fee." *Id.*, ¶¶ 2-3. With the full price disclosed, the customer was able to click "Select" and move forward with the transaction. *Id.* Thus, in *Frias* the court found the website did not violate the language of the statute because "customers see the 'Full Price' of a ticket without them having to leave the initial seating chart." *Id.*, ¶ 7. In contrast, here, only after the consumer clicks on "Continue to Checkout" or "Express Checkout" does Fandango disclose, on a fifth webpage, the true total cost for the tickets. Compl., ¶ 32. Thus, Fandango's purchase flow clearly violates the plain language of NYCAL § 25.07(4), requiring that "disclosure of the total cost and fees shall be displayed in the ticket listing *prior to the ticket being selected for purchase*" and that "[t]he price of the ticket shall not increase during the purchase process…."

Applying the NYCAL to all consumers not only follows Fandango's express choice of law provision, but also fosters predictability and fairness for Fandango and consumers by consistently applying New York law. *See, e.g.*, *Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 476 (2015) (choice of law provisions further "stability, certainty, predictability and convenience" for corporations that operate throughout different states). Fandango does not meaningfully dispute

the purchase flow violates § 25.07 of the NYCAL, but instead attempts to escape liability by arguing for non-existent limitations on NYCAL's scope.

### 2. The Plain Language of the NYCAL Does Not Limit its Application Only to Sales at Venues in New York.

The decision of the Legislature to include a specific requirement or limitation in a statute must be viewed as a matter of legislative design. *People v. Viviani*, 145 N.Y.S.3d 512 (2021) (*citing Pajak v Pajak,* 56 NY2d 394, 397 (1982)). Further, courts may not create a limitation the Legislature did not enact in a statute which is otherwise clear and unequivocal on its face. *See Theroux v. Reilly*, 771 N.Y.S.2d 43, 803 N.E.2d 364 (2003) ("If the Legislature had intended to restrict section 207-c eligibility, it easily could have and surely would have written the statute to say so. We may not create a limitation that the Legislature did not enact. Further, a statute's plain meaning must be discerned without resort to forced or unnatural interpretations."); *see also Gladsky v. Glen Cove*, 563 N.Y.S.2d 842 (App. Div. 1991) ("The Legislature did not see fit to include a public-use limitation in the statute, and we decline to engraft such a limitation in a statute which is otherwise clear and unequivocal on its face.").

Nothing in Section 25.07 limits that section's application solely to ticket sales at venues located in New York, stating in pertinent part:

> ***Every*** operator or operator's agent of a place of entertainment, any licensee or other ticket reseller, or ***platform that facilitates the sale*** or resale ***of tickets shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser***. ***Such disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase***…

*See* NYCAL § 25.07 (emphasis added).

NYCAL § 25.07 contains no geographical limitations and is *unlike* New York's General Business Law and other laws where the legislature expressly limited application only to transactions that occur within New York. *See Spellmans Marine Inc. v. HC Composites L.L.C.*, 178 N.Y.S.3d 379 (Sup. Ct. 2022) ("'The failure of the Legislature to include a matter within a particular statute is an indication that its exclusion was intended.'"); *McVetty v. Tomtom N. Am., Inc.*, 2021 U.S. Dist. LEXIS 47922, at *7 (S.D.N.Y. Mar. 13, 2021) (GBL includes the limiting phrase "in this state").

Moreover, the legislature included language in unrelated parts of NYCAL that did geographically limit its application, such as in § 25.05 titled "Ticket Speculators," which limits application of that section to "…any street in a city or in the county of Nassau…". That the legislature did not include any language in § 25.07 that geographically limits its application to ticket "sales," like other sections of NYCAL, is further support the legislature chose not to place geographic limits on § 25.07's application to all ticket "sales." *See People v. Aviles*, 148 N.Y.S.3d 659 (Crim. Ct. 2021) ("Where a statute describes the particular situations in which it is to apply and no qualifying exception is added, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded.").

Fandango's argument to apply the geographic limitation for a ticket "resale" to a ticket sale should be rejected. It is unreasonable to materially alter or rewrite a statute and apply significant restrictions the legislature expressly required in the context of ticket "resales" when the legislature did not express an intent to apply the same limitation to ticket sales. The legislature chose to differentiate between sales, resales, and speculators in NYCAL and *only* applied geographical limits to the activities of resellers and speculators, *not* sales. In § 25.01 the New York Legislature

declared as to original sales like this one at issue that they are subject to New York's supervision without erecting geographical boundaries on such sales:

> The legislature finds and declares that transactions involving tickets for admission to places of entertainment are a matter of public interest and subject to the supervision of New York and the appropriate political subdivisions of the state for the purpose of safeguarding the public against fraud, extortion, and similar abuses.

*See* NYCAL § 25.01.

That legislative finding is different, distinct and separate from the legislature's finding about resellers:

> The legislature further finds that many ticket *resellers* advertise and sell tickets to places of entertainment within the boundaries of New York state often from locations outside the state, without adhering to the provisions of this article. ***The legislature objects to any claim that businesses domiciled outside New York state are exempted from this statute when selling tickets to events occurring in New York state***, regardless of the territories of origin of both the buyer and seller. It is the legislature's intent that ***all governmental bodies charged with enforcement of this article, including the attorney general of New York state have the authority to regulate the activities of all persons reselling tickets to venues located within this state to the full extent of the state's powers under the federal and state constitutions*** and that this article be construed in light of this purpose."

*Id.* (emphasis added).

As Fandango's argument admits, the statute differentiates between sales and resales by defining resale – the only definition within the statute that contains a geographical limit – and not defining sale at all. *See People v. Weston*, 119 N.Y.S.3d 841 (Crim. Ct. 2020) (reasoning "[h]ad the legislature intended [particular] provisions to exclude the 48-hour grand jury period, it would expressly have done so"). Other defined terms in NYCAL which pertain to the sale of tickets, also do not have language limiting the geographical scope, as found in the term "resale":

1. "Entertainment" means all forms of entertainment including, but not limited to, theatrical or operatic performances, concerts, motion pictures, all forms of entertainment at fair grounds, amusement parks and all types of athletic competitions including football, basketball, baseball, boxing, tennis, hockey, and any other sport, and all other forms of diversion, recreation or show.

2. "Established price" means the price fixed at the time of sale by the operator of any place of entertainment for admission thereto, which must be printed or endorsed on each ticket of admission.

3. "Final auction price" shall mean the price paid for a single ticket by a winning bidder. …

4. "Not-for-profit organization" means a domestic corporation incorporated pursuant to or otherwise subject to the not-for-profit corporation law, …, or a corporation having tax exempt status under section 501(c)(3) of the United States Internal Revenue Code, and shall further be deemed to mean and include any federation of charitable organizations.

5. "Operator" means any person who owns, operates, or controls a place of entertainment or who promotes or produces an entertainment.

6. "Place of entertainment" means any privately or publicly owned and operated entertainment facility such as a theatre, stadium, arena, racetrack, museum, amusement park, or other place where performances, concerts, exhibits, athletic games or contests are held for which an entry fee is charged.

7. "Physical structure" means the place of entertainment, or in the case where a structure either partially or wholly surrounds the place of entertainment, such surrounding structure.

8. "***Resale*" means any sale of a ticket for entrance to a place of entertainment located within the boundaries of the state of New York other than a sale by the operator or the operator's agent who is expressly authorized to make first sales of such tickets*. *Resale shall include sales by any means, including in person, or by means of telephone, mail, delivery service, facsimile, internet, email or other electronic means, where the venue for which the ticket grants admission is located in New York state*. Except as provided in sections 25.11 and 25.27 of this article, *the term "resale" shall not apply to any person, firm or corporation which purchases any tickets solely for their own use or the use of their invitees, employees and agents or which purchases tickets on behalf of others and resells such tickets to such invitees, employees and agents or others at or less than the established price. Similarly, the term "resale" shall not apply to any not-for-profit organization, or person acting on behalf of such not-for-profit organization, as long as any profit realized from ticket reselling is wholly dedicated to the purposes of such not-for-profit organization*.

9. "Ticket" means any evidence of the right of entry to any place of entertainment.

10. "Ticket office" means a building or other structure located other than at the place of entertainment, at which the operator or the operator's agent offers tickets for first sale to the public.

*See* NYCAL §25.03 (emphasis added).

Fandango's argument, that the Court should infer a geographic limitation on sales based upon other sections of NYCAL which expressly only apply to "Resales," despite the legislature not having made such a limitation, should be rejected. The plain language of the statute and rules of statutory construction belie accepting Fandango's faulty statutory reading.

Fandango's reliance on *People v. Concert Connection, Ltd.*, 629 N.Y.S. 2d 254 (App. Div. 2d Dep't 1995), to support its argument is misplaced because that case is inapplicable to the facts here. *First*, Plaintiff is not seeking to apply NYCAL to a transaction that occurred "wholly outside" New York. Every consumer transaction with Fandango, including Plaintiff's, involved connections with New York, including at a minimum, (i) being subject to Fandango's New York choice of law provision; (ii) being subject to Fandango's New York forum selection clause; and (iii) Fandango operating as a subsidiary of NBCUniversal which is headquartered in New York. Compl., ¶¶ 9, 11-12. When a consumer transaction, like the one here, has contacts with multiple states it cannot be said that the transaction occurred wholly outside of any of those states. *Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115 (2d Cir. 2013) (New York governing law and venue clauses supported finding "*some part* of the underlying transaction…occur[red] in New York State*") (emphasis added); *see also Polk v. DelGatto, Inc,* 2021 U.S. Dist. LEXIS 137764 (S.D.N.Y. July 23, 2021) (choice of law provision selecting New York law and receiving payments at New York office are sufficient so that *some part* of the underlying transaction occurred in New York); *Wright v. Publrs. Clearing House, Inc.*, 439 F. Supp. 3d 102, 112 (E.D.N.Y. 2020) ("the parties' agreement to a New York choice-of-law provision certainly *enhances the transactions' connection*

13

*to the state*," even if ultimately the transaction did not occur in New York under the GBL) (emphasis added). Indeed, the Defendant does not contest that Plaintiff's transaction involved sufficient connections with New York such that there is a reasonable basis to enforce the choice of law provision.

*Second*, *Concert Connection* addressed whether the NYCAL applied to out of state "resellers," a question not at issue here. *See* ECF No. 9 at 8, citing *Concert Connection,* 629 N.Y.S. 2d at 259. In addressing whether the NYCAL applied to out of state "resellers," *Concert Connection* did not interpret NYCAL's jurisdictional scope in the context of a sale, a term undefined in the NYCAL without any jurisdictional limitation. Importantly, *Concert Connection* did not involve a choice of law provision that selects only New York law, as is the situation here. Similarly, Fandango's argument that "no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state enacting it," ECF No. 9 at 7 (quoting *Magnuson v. Newman*, 2013 U.S. Dist. LEXIS 138595, at *16 (S.D.N.Y. Sep. 25, 2013)) is inapposite where here, Fandango affirmatively chose to apply New York substantive law to its relationship with ***all*** consumers. *Cf. Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, 2015 U.S. Dist. LEXIS 125961, at *24-26 (E.D.N.Y. Sep. 18, 2015) (observing "the New York Court of Appeals has rejected the wooden way in which defendants would answer th[e] question" of whether a statute applies extraterritorially and instead would find "New York's choice-of-law principles govern the outcome of th[e] matter" (quoting *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521 (1994))). Here, under New York's choice of law principles, Fandango's express choice of law provision supports applying New York's substantive law. *See Ministers*, 26 N.Y.3d at 476.

In short, Fandango's interpretation of NYCAL's geographic scope is unreasonable given the legislature chose to not expressly limit all sales to venues within New York. The fact the

legislature did not choose to limit any other relevant, defined terms – *i.e.,* Entertainment, Operator, Place of entertainment, Physical structure, or Ticket office – to within the boundaries of New York state, also supports Plaintiff, not Fandango. If the Legislature intended NYCAL § 25.07 to apply only to sales occurring at venues located in New York, it surely would have done so in a direct manner such as putting a geographical limit in § 25.07 or defining the term sale to include such a limitation, rather than extending the definition of "resale," which actually expressly excludes Plaintiff's transaction from that term's limited scope. *See* §25.03(8) (defining "resale" to exclude "a sale by the operator or the operator's agent who is expressly authorized to make first sales of such tickets."); *see also Pultz v. Economakis*, 830 N.Y.S.2d 101 (App. Div. 2007) (finding Legislature's failure to include a limitation "is powerful evidence that no such limit was intended").

### B.  Fandango's Drip Pricing Practice Violates Both Prongs of ICFA as Both a Deceptive Act and an Unfair Practice

Illinois and other states recognize the importance of FTC rules to protect consumers and, therefore, incorporate the FTC rules into the Illinois Consumer Fraud Act and other state consumer protection statutes.  *See Sava v. 21st Century Spirits, LLC*, 2024 U.S. Dist. LEXIS 111496, at \*25-26 (N.D. Ill. June 25, 2024) (explaining ICFA is among state statutes known as "Little FTC Acts," patterned on Section 5 of the FTC Act, and "provid[ing] private rights of action" with respect to practices prohibited by Section 5). Fandango's drip pricing practice violates Section 5 of the FTC Act and, therefore, the ICFA also as a deceptive act and unfair practice. As detailed above and in Plaintiff's complaint, the FTC has clearly and repeatedly indicated the drip-pricing practice Plaintiff challenges here is unfair and deceptive. Notably, nowhere does Fandango mention in its Motion the FTC's rule, the findings it is based on, or the numerous cases that recently addressed deceptive and unfair drip pricing claims in light of those findings.

1.  **Fandango's Choice of Law Provision is Unenforceable as to Plaintiff's ICFA Claim Because its Application Would Violate a Fundamental Public Policy of Illinois, Which Has a Greater Material Interest than New York**

While applying the NYCAL here comports with fundamental fairness and Fandango's choice of law (as demonstrated above), barring Plaintiff's ICFA claims on the basis of Fandango's choice of law would be fundamentally unfair and violate constitutional principles afforded to Plaintiff and putative class members (as demonstrated below).

Fandango's motion to dismiss the ICFA claim may be granted only if Plaintiff's claim that the ICFA is applicable is not plausible. *See, e.g.*, *LG Capital Funding, LLC v. Exeled Holdings Inc.*, 2024 U.S. Dist. LEXIS 43867, at *51 (S.D.N.Y. Mar. 13, 2024). Here, Plaintiff's allegations plausibly demonstrate New York's choice of law rules would bar enforcement of Fandango's choice of law provision as to her claim under the ICFA because the public-policy exception to enforcement of the clause applies, as historically recognized by New York courts.

In New York, "courts will *generally* enforce choice-of-law clauses." *Ministers*, 26 N.Y.3d at 470 (emphasis added). "But the New York Court of Appeals has not addressed whether this rule yields to the common-law 'public-policy exception,' under which courts enforce the parties' chosen law unless its application 'would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue.'" *700 Camp St., LLC v. Mt. Hawley Ins. Co.*, 2024 U.S. Dist. LEXIS 175266, at *6 (S.D.N.Y. Sep. 26, 2024) (quoting Restatement (Second) of Conflict of L. § 187(2)(b)). "New York intermediate courts provide reason to think that New York courts recognize the public-policy exception," *id.*, and in *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, the Second Circuit recognized this "possible exception" to the *Ministers* rule and observed that a New York choice of law provision might not be enforceable where it violated another state's public policy or statutory

16

directives. 51 F. 4th 456, 472-73 (2d Cir. 2022) (citing, *e.g.*, *Marine Midland Bank, N.A. v. United Missouri* Bank, N.A., 223 A.D.2d 119, 124, 643 N.Y.S.2d 528 (1st Dep't 1996), and *North American Elite Insurance v. Space Needle, LLC*, 200 A.D.3d 425, 159 N.Y.S.3d 396 (1st Dep't 2021)); *see also Medtronic, Inc. v. Walland*, 2021 U.S. Dist. LEXIS 172235, at *12-15, 20-21 (S.D.N.Y. Sep. 10, 2021) (recognizing exception; finding where "California has a materially greater interest than does New York, and because New York law would violate a fundamental public policy of California, the law of California governs the instant suit, contrary to the choice-of-law provision"); *LG Capital Funding*, 2024 U.S. Dist. LEXIS 43867, at *52-53 (recognizing exception); *Cambridge Capital LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 418 (S.D.N.Y. 2023) (same). Nor will New York courts enforce choice-of-law provisions "where the chosen law violates some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." *United States v. Moseley*, 980 F.3d 9, 20 (2d Cir. 2020).

District courts applying this public-policy exception as recognized in other states, have similarly determined that a choice of law provision is barred as to particular claims where enforcement of the clause would be contrary to the public policy embedded in another state's statute. *See Midwest Enterprises, Inc. v. Generac Corp.*, 1991 U.S. Dist. LEXIS 12016 (N.D. Ill. Aug. 27, 1991) (applying choice of law provision to Count I, but not to Count III for violation of Illinois statute because to do so would violate fundamental public policy of Illinois); *see also Brighton v. Lutheran Church-Missouri Synod*,  2013 U.S. Dist. LEXIS 198211, at *11-13 n.7 (C.D. Cal. Feb. 1, 2013) (recognizing "[a] choice-of-law provision may be found enforceable as to certain claims, and not enforceable as to others"; refusing to enforce provision as to certain claims reflecting state's fundamental policy as expressed by its legislature); *Cardonet, Inc. v. IBM*,

17

2007 U.S. Dist. LEXIS 14519 (N.D. Cal. Feb. 14, 2007) (considering enforceability of choice of law provision on a claim by claim basis.)

Applying these principles here, the application of Fandango's choice of law provision to Plaintiff's ICFA claim violates a fundamental principle of justice and satisfies the public-policy exception to enforcement. Applying New York law would be contrary to Illinois' codified public policy against waiver of the rights and remedies the Illinois legislature afforded to Illinois consumers. Illinois passed the ICFA to eliminate the high hurdle that consumers face bringing common law fraud claims, which prevented most consumers from having a viable remedy for the harms consumers typically suffered in the course of trade and commerce. To alleviate this burden on consumers, the ICFA, unlike common law fraud claims, does not require Plaintiff to show actual reliance on the deceptive acts or that the defendant committed the deceptive acts in bad faith. *See Randels v. Best Real Estate*, 243 Ill. App. 3d 801, 805 (2nd Dist. 1993); *Duhl v. Nash Realty, Inc.*, 102 Ill. App. 3d 483, 495 (1st Dist. 1981). Instead, the ICFA is to be liberally construed and broadly applied to eradicate all forms of deceptive and unfair business practices in Illinois, including the ticket price scheme Fandango engages in here. *Randels*, 243 Ill. App. 3d  at 805; *Petri v. Gatlin*, 997 F. Supp. 956, 966 (N.D. Ill. 1997) (string cite omitted).

Additionally, application of Fandango's choice of law provision violates a fundamental public policy of Illinois that every harm must have a cognizable remedy. *See* Ill. Const. 1970, art. 1. §12 ("Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation.  He shall obtain justice by law, freely, completely, and promptly."). Evidence that the Illinois legislature deemed the rights and remedies of consumers to be a fundamental public policy of the state is embodied in the statute's nonwaiver provision that clearly provides, "Any waiver or modification of the rights, provisions, or remedies

18

of this Act shall be void and unenforceable." 815 ILCS 505/10c. *Cf. Midwest Enterprises*, 1991 U.S. Dist. LEXIS 12016, at *11-12 (finding "[e]nforcement of the choice-of-law provision … would be contrary to the … public policy of Illinois" to protect the rights of sales representatives working in Illinois, "as articulated in the [Illinois statute's] nonwaiver provision").

None of the cases Fandango relies on in support of its contention that Plaintiff's ICFA claims are barred by the choice of law provision considered the implications of the ICFA's nonwaiver provision. *See* ECF No. 9 at 9-10 (citing *Coscarelli v. Esquared Hosp. LLC*, 364 F. Supp. 3d 207, 219-21 (S.D.N.Y. 2019) (considering only the scope of the choice of law provision, not any public policy exception to enforcement); *Brink's Glob. Servs. USA, Inc. v. Bonita Pearl Inc.*, 2025 U.S. Dist. LEXIS 112089, at *89 (S.D.N.Y. June 12, 2025) (not discussing public policy exception; instead, finding contract would have to be entirely unenforceable for California statute to apply); *Sandoval v. Uphold HQ Inc.*, 2024 U.S. Dist. LEXIS 55045, at *12 (S.D.N.Y. Mar. 27, 2024) (enforcing choice-of-law provision without analysis where "Plaintiffs d[id] not dispute that they are precluded from asserting claims under a non-New York consumer protection statute given the governing choice-of-law provision"); *Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 505 (E.D.N.Y. 2016) (recognizing exception, but finding *inter alia* no authority to support that North Carolina, Nevada, or Florida statutes reflect "fundamental" public policy). Here, as in *Midwest Enterprises*, enforcement of the clause to bar Plaintiff's ICFA claim would be contrary to the fundamental policy of Illinois to protect its consumers.

Moreover, applying Fandango's choice of law provision to bar Plaintiff's ICFA claim would violate a fundamental principle of justice. Here, Fandango is attempting to use the choice of law clause to immunize itself from liability to consumers. Specifically, Fandango contends its choice of law provision bars any claims by consumers under the consumer protection laws of their

home states, while knowing the New York legislature expressly limited application of New York's consumer fraud statute to acts "in this state." NY GBL § 349(a). At the same time, Fandango takes the position that despite its affirmative decision to broadly apply New York law to its relationship with *all* consumers, the NYCAL cannot apply to any venues located outside New York, despite no such territorial limits on that statute (as demonstrated above). By ceasing its drip-pricing practices only for New York venues, while claiming the application of New York law to consumers nationwide, Fandango attempts to evade review under virtually all consumer protection statutes. Thus, Fandango's choice of law provision must be deemed unenforceable as to Plaintiff's claim in Count II because allowing Fandango to avoid the statutory consumer fraud claims of nearly all consumers who have no ability to change the choice of law provision in Fandango's terms and conditions is fundamentally unfair.

Finally, Illinois has a materially greater interest in the application of its law to protect Illinois residents where the Plaintiff resides in Illinois and initiated the purchase of a ticket to a movie venue in Illinois, despite the New York contacts noted above. *See, e.g.*, *Medtronic,* 2021 U.S. Dist. LEXIS 172235, at *18-20 (finding although "New York certainly has some interest in the matter," state of plaintiff's residence had greater interest).

### 2. Plaintiff Adequately Pleads A Deceptive Act Claim Under ICFA

Fandango attacks the merits of Plaintiff's deceptive act claim under ICFA on the basis Plaintiff was eventually "alerted to the convenience fee she now complains of." ECF No. 9 at 12. However, under the ICFA, Fandango's drip pricing scheme is deceptive even where a consumer eventually learns of the deception by learning the true cost of the tickets, including fees, before purchase. Specifically, a company engages in a deceptive act under ICFA when it "makes a false or misleading statement of fact concerning the reasons for, existence of, or amount of price

reductions," *or "engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." Camasta v. Jos. A. Bank, Clothiers, Inc.*, 2013 U.S. Dist. LEXIS 16509, *15 (N.D. Ill. Feb. 7, 2013) (citing 815 ILCS 510/2(a)(11)-(12)) (emphasis added).  ICFA does not require a showing of reliance to state a claim.  *Illinois v. CMK Invs., Inc.*, 2014 U.S. Dist. LEXIS 169920, at *19 (N.D. Ill. Dec. 9, 2014). Instead, "Illinois consumer protection law assumes that consumers will rely on advertised prices."  *Kahn v. Walmart Inc.*, 107 F.4th 585, 597 (7th Cir. 2024).

Fandango's argument that including the convenience fee at checkout cures all deception was rejected by the Seventh Circuit. In *Kahn*, the Seventh Circuit determined that initially showing consumers one price only and then later charging a higher price at checkout is deceptive "even where the consumer discovers the price discrepancy *before* completing a transaction." 107 F.4th at 600-01 (emphasis in original). The court relied on the FTC's findings and rules in rendering its decision. *Id.* It observed that "[b]oth courts applying Illinois law and federal regulators have recognized 'bait-and-switch' pricing as a deceptive practice." *Id.* at 601 (citing 88 Fed. Reg. 77420, 77432) ("Pricing structures that do not initially disclose the total cost of a good or service are deceptive even if the total cost is disclosed at some point during the transaction.  It has long been the FTC's position that misleading door openers are deceptive."); *see also Williams-Ellis v. Mario Tricoci Hair Salons & Day Spas*, 2007 U.S. Dist. LEXIS 80954, at *19 (N.D. Ill. Nov. 1, 2007) ("Where deceptive advertising gets the plaintiff 'in the door' such 'bait and switch' schemes have been held to be an ICFA violation.") (citation omitted).

Significantly, one court in California, addressing the same conduct under California state consumer protection law denied Fandango's demurrer. *See Reeves v. Fandango Media, LLC*, 2025 Cal. Super. LEXIS 28090 at *17-19 (Cal. Sup. Ct. Apr. 8, 2025) (denying demurrer where plaintiff

alleged *inter alia* Fandango's drip-pricing practice caused her to pay more than she would have given Fandango's fees were not disclosed until after consumers select their movie tickets, at which point the harm was done).[2]

Fandango's employment of drip pricing mechanics here is likewise inherently deceptive because it forces consumers to transact under false pretenses. Consistent with the findings of the FTC, purchase flows like that used by Fandango here are deceptive because the drip pricing scheme baits consumers into a transaction by displaying a lower ticket price initially, only to later switch to a higher price at checkout by adding a previously undisclosed mandatory convenience fee. *See, e.g.*, 88 Fed. Reg. 77420; 90 Fed. Reg. 2066.

Fandango's citation to *Washington v. Hyatt Hotels Corp*, 2020 U.S. Dist. LEXIS 101118, at *1 (N.D. Ill. June 9, 2020), is unavailing because that case's reasoning is outdated, issued before the FTC's specific findings and conclusions on drip pricing, and before the Seventh Circuit's *Kahn* decision. Further, the facts of *Hyatt Hotels* are distinguishable. There, before a particular room was displayed, the first screen "ma[de] clear to the customer that the quoted price starts '*from* $104 avg/night'"—meaning the $104 price constitutes the *minimum starting price* from which a customer might select for that room per night." 2020 U.S. Dist. LEXIS 101118, at *8 (initial emphasis added, subsequent emphasis in original). *See New Vision Unlimited, LLC v. Glasses USA, Inc.*, 2023 U.S. Dist. LEXIS 86992, *21 (S.D. Fla. May 17, 2023) (emphasizing the

---

[2] The fact that Fandango did not assert its choice of law clause against the plaintiff's California claims in *Reeves* (*see Reeves v. Fandango Media, LLC*, No. 24STCV14691, Defendant's Mem. of Points & Auth in support of Demurrers (Cal. Sup. Ct. Nov. 12, 2024)) (Ex. C), highlights that application of Fandango's choice of law clause to bar Illinois consumers' claims here would be arbitrary and fundamentally unfair. *Cf. Hemlock Semiconductor Pte. Ltd. v. Jinglong Indus. & Commerce Group Co., Ltd.*, 2017 NYLJ LEXIS 1199, *18 (N.Y. Sup. Ct, N.Y. Cnty, May 11, 2017) (confirming due process requires choice of law provisions must not be applied in an arbitrary or fundamentally unfair manner).

disclosure of "minimum starting price" in the *Hyatt Hotels* case negated the advertisement as deceptive). Then, *before* a customer selected a particular room type, a "second screen provide[d] a description of the resort fee, including its cost and its purpose." *Id.* at *8. Accordingly, *Hyatt Hotels* does not help Fandango because there the defendant disclosed the fee before consumers even selected a room to purchase. Here, in contrast, consumers using Fandango.com are shown a lower initial price without a convenience fee as they select tickets to purchase.

Finally, Plaintiff pled cognizable damages which includes the difference between the lower advertised price and the higher price paid at checkout, (*see, e.g.*, ECF No. 1, ¶¶ 2, 94-95), and the price premium Fandango charged consumers because of the drip pricing scheme, which creates price inflation compared to the practice of displaying the total price being shown upfront (*see id.*, *see also id.*, ¶¶ 5, 13-26; Ex. 1), and entitlement to the $50 statutory damages available under the NYCAL. *See Kahn,* 107 F.4th at 601 ("[C]onsumers may find it too costly to search for total price information for some or all goods under consideration for any of a variety of the real-life reasons. This leads consumer demand to become less elastic, and consumers will accept higher prices relative to an efficient equilibrium."); *see also Berryman,* 763 F. Supp. 3d at 606 ("Berryman's Complaint alleges that the fee she paid to secure her tickets was unlawful insofar as the total purchase price was not disclosed at the outset. Such qualifies as a 'pocketbook injury' sufficient to give rise to Article III standing.").

### 3. Plaintiff Adequately Pleads An Unfair Practice Claim Under ICFA

Whether a practice is unfair under ICFA is determined by weighing three factors: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive or unscrupulous; and (3) whether it causes substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18 (2002). All three criteria do not need to be satisfied to support

a finding of unfairness; rather, a practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. *Id.* at 18.

In *Kahn*, the Seventh Circuit rejected the argument that providing the total price at checkout dispelled all deception, but that even if all potential for deception were deemed to have been dispelled by providing the total cost at checkout, Walmart's inaccurate shelf prices could still constitute an "unfair" business practice by creating a situation that is "oppressive" and substantially injures consumers. *Kahn,* 107 F.4th at 602. Analyzing the claim under Rule 8(a), the *Kahn* court concluded the defendant's inaccurate shelf prices constituted an unfair practice because (i) the prices violated 815 ILCS 510/2(a)(11) and, thus, Illinois public policy; (ii) the practice was immoral, unethical, and oppressive because consumers had little choice but to submit to the inaccurate prices or spend more time and effort comparison shopping and rectifying any overcharges; and (iii) pricing practices that cause small harms to large numbers of consumers cause substantial injuries. *Id.* at 602-03.

Here, Fandango's use of drip pricing similarly violates Illinois public policy because it violates the ICFA's prohibition against bait and switch pricing and advertising goods without the intent to sell them as advertised. ECF No. 1, ¶¶ 27-45,73, 78-95. Consumers have little choice but to submit to drip pricing schemes because a company that engages in drip pricing makes it impossible for consumers to effectively comparison shop. Instead, consumers are forced to invest significant time and effort into a transaction to discover the total cost the company charges for a good or service. Drip pricing schemes leave consumers with little choice but to submit because the purchase flow is designed to make reasonable consumers feel compelled to finish the transaction despite the higher prices being charged. *See id.*, ¶¶ 13-26 (citing FTC findings); *see also Mubascher Ahmed v. Autotrader.com, Inc.*, 2018 U.S. Dist. LEXIS 251106, at *9 (N.D. Ill. Mar.

24

28, 2018) ("where a plaintiff alleges bait-and-switch advertising as a violation of ICFA, it does not matter whether the plaintiff knew that he or she was purchasing the product at a higher price than that advertised.") (citation omitted).

It is well established that small injuries to consumers in the aggregate can amount to substantial injuries to satisfy ICFA's unfair prong. *See, e.g.*, *Kahn*, 107 F.4th at 603 (collecting cases and noting that the FTC agrees: "[c]harging consumers under [these] false pretenses causes substantial injury, including where the injury is a small harm to a large number of people").

### 4.    The Voluntary Payment Doctrine Does Not Bar Plaintiff's Claims

The voluntary payment doctrine is not a bar to Plaintiff's claims because (i) the Plaintiff satisfies the fraud and duress exceptions to the doctrine; and (ii) the doctrine is an affirmative defense that present questions of fact that are not appropriate for resolution at the motion to dismiss stage. *Keating v. City of Chicago*, 2013 IL App (1st) 112559-U, ¶ 67, collecting cases and *citing Raintree Homes, Inc. v. Village of Long Grove*, 389 Ill. App. 3d 836 (2nd Dist. 2009) (modern trend against a harsh application of the doctrine).

Plaintiff fits the fraud exception to the voluntary payment doctrine because the fee was collected as part of a deceptive drip pricing scheme and "the voluntary payment doctrine 'does not apply when a plaintiff's claim is predicated on a lack of full disclosure by defendant." *Berryman*, 763 F. Supp. 3d at 607 (citing *Fink v. Time Warner Cable*, 810 F. Supp. 2d 663, 649 (S.D.N.Y. 2011)) (among others); *Summerville*, 765 F. Supp. 3d at 301 ("voluntary payment doctrine does not apply when a plaintiff challenges full disclosure by the defendant") (citing *Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009)); *Charles v. Color Factory, LLC*, 2024 WL 1693236, at *4 (S.D.N.Y. Apr. 19, 2024) (same).

Plaintiff also fits the duress exception because the drip pricing scheme compels reasonable consumers to submit to the fee and overall higher prices. *Kahn*, 107 F.4th at 601 ("Bait-and-switch pricing schemes like the one alleged here lead to injuries that consumers 'cannot reasonably avoid,' which come 'in the form of higher prices and search costs.' In a 'bait-and-switch' pricing scheme, 'either the consumer must spend additional time searching for full pricing information to engage in comparison shopping, or must make an uninformed decision.'") (internal citations omitted).

Finally, the voluntary payment doctrine is an affirmative defense that usually presents a question of fact that is inappropriate for resolution at the motion to dismiss stage. *See Bown v. SBC Commc'ns., Inc.*, 2007 U.S. Dist. LEXIS 14790, at *28-29 (S.D. Ill. Mar. 1, 2007); *Summerville*, 765 F. Supp. 3d at 301 (same); *see also Madrigal v. Ticketmaster, LLC*, 2025 U.S. Dist. LEXIS 130581, at *5 (C.D. Cal. July 8, 2025) ("the issues raised by Defendants are more appropriately resolved on a motion for summary judgment"); and *Madrigal*, No. CV 25-2375-JFW(KSx), ECF No. 33-1 (C.D. Cal. May 23, 2025) (defendant's motion to dismiss asserting voluntary payment doctrine).

## V.    Conclusion

Plaintiff's Complaint adequately states claims for relief under § 25.07 of the New York Arts & Cultural Affairs Law and under Illinois' Consumer Fraud Act because Fandango engaged in deceptive acts and unfair practices when it implemented its drip pricing scheme. Fandango's request to let their deceptive drip pricing scheme continue nationwide without accountability or court scrutiny should be denied.

If the Court dismisses Plaintiff's statutory claims, she respectfully requests doing so without prejudice so that she may amend the Complaint to bring claims under appropriate statutory or common law.

Dated:  September 10, 2025                    Respectfully submitted,

                                             **VOZZOLO LLC**

                                             *By:/s/ Antonio Vozzolo_____*

                                             Antonio Vozzolo
                                             Andrea Clisura
                                             499 Route 304
                                             New City, New York 10956
                                             Telephone: (201) 630-8820
                                             Email: avozzolo@vozzolo.com
                                                      aclisura@vozzolo.com

                                              - and -

                                             345 Route 17 South
                                             Upper Saddle River, NJ 07458
                                             Telephone: (201) 630-8820

                                             Kenneth T. Goldstein
                                             (admitted *Pro Hac Vice*)
                                             Matthew G. Norgard
                                             (admitted *Pro Hac Vice*)
                                             **The Law Office of Kenneth T. Goldstein,
                                             PLLC**
                                             20 North Wacker Drive, Suite 1006
                                             Chicago, Illinois 60606
                                             Telephone: (312) 606-0500
                                             Email: ken@krislovlaw.com
                                                      mnorgard@krislovlaw.com

                                             Michael R. Karnuth (*Pro Hac Vice* to be
                                             filed)
                                             **The Law Offices of Michael R. Karnuth**
                                             203 N. LaSalle St., Suite 2100
                                             Chicago, Illinois 60601
                                             Telephone: (312) 391-0203
                                             Email: mike@karnuthlaw.com

                                             *Attorneys for Plaintiff and the Proposed
                                             Classes*

**<u>Certificate of Compliance with Word-Count Limit</u>**

This document complies with the word-count limitation of Local Rule 7.1(c) because,

excluding the partes of the document that are exempted, this document contains 8741 words.

This certificate was prepared in reliance on the word-count function of the word-processing

system (Microsoft 365) used to prepare the document.

By:<u>*/s/ Antonio Vozzolo*_____</u>

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STACY ZEID, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No.: 1:25-cv-04763-JHR |
| v. | Hon.  Jennifer H. Rearden |
| FANDANGO MEDIA, LLC | |
| Defendant. | |

**PLAINTIFF'S EXHIBITS TO**
**OPPOSITION TO DEFENDANT FANDANGO MEDIA, LLC'S**
**MOTION TO DISMISS**

*Mannion v. Fandango Media, LLC*, Case # 1:23-cv-11150-DEH (S.D.N.Y.)
Civil Docket ..................................................................................Exhibit A

*Awad and Mannion v. Fandango Media, LLC*, No. 610563/2024
(N.Y. Sup. Ct. Nasssau Cnty.) Class Action Settlement Agreement...............Exhibit B

*Reeves v. Fandango Media, LLC*, Case No. 24STCV14691 (Cal. Sup. Ct.)
Defendant Fandango Media LLC's Memorandum of Points and Authorities
in Support of Demurrers to Complaint ..........................................................Exhibit C