# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STACY ZEID, on behalf of herself and all others similarly situated,<br><br>                       Plaintiff,<br><br>                v.<br><br>FANDANGO MEDIA, LLC<br><br>                       Defendant. | Case No.: 1:25-cv-04763-JHR<br><br>Hon. Jennifer H. Rearden |

**PLAINTIFF'S PROPOSED SUR-REPLY**

**TO DEFENDANT FANDANGO MEDIA, LLC'S MOTION TO DISMISS**

## TABLE OF CONTENTS

I.  Fandango's Assertion that the NY GBL Applies to Its Transactions With Consumers Outside New York Supports Finding NYCAL Claims Viable Also ................................................................................................1

II. Fandango's Reliance on *Morales v. SportsEngine, Inc.* is Misplaced ................3

**CONCLUSION** ........................................................................................................5

## TABLE OF AUTHORITIES

**Cases**

*Expressions Hair Design v. Schneiderman*,
    32 N.Y.3d 382 (NY 2018) ..................................................................................5

*Morales v. SportsEngine, Inc.*,
    No. 1:24-cv-02971-JGLC, Dkt. 40, 2025 U.S. Dist. LEXIS 182209
    (S.D.N.Y. Sept. 17, 2025) ...............................................................................3, 4

*People v. Concert Connection*,
    211 A.D.2d 310, 629 N.Y.S.2d 254 (App. Div. 2nd Dept. 1995) .................................3

**Statutes**

NYCAL § 25.07(4) .............................................................................................3

N.Y. Gen. Bus Law § 349(a) ................................................................................2

N.Y. Gen Bus. Law § 350 ....................................................................................2

Plaintiff Stacy Zeid ("Plaintiff") files this proposed Sur-reply to address new arguments and a new case raised by Defendant Fandango Media, LLC ("Fandango") in its Reply to Plaintiff's Opposition to Motion to Dismiss.

### I.    Fandango's Assertion That The NY GBL Applies To Its Transactions With Consumers Outside New York Supports Finding NYCAL Claims Viable Also

Fandango's Reply raises a new argument which is inconsistent with an argument made in its opening brief and which fully supports Plaintiff's position that, given Fandango's choice of law provision, the New York Arts and Cultural Affairs Law ("NYCAL") should be applied to Fandango's transactions with consumers purchasing tickets for venues outside New York. In its opening motion Fandango argued that NYCAL does not apply because Plaintiff's ticket transaction occurred "outside" New York. *See* Fandango's Memorandum of Law in Support of Motion to Dismiss, ECF No. 9, pp. 5, 7-8 ("Plaintiff asks this Court to be the first to adopt the notion that the NYACAL applies outside the border of New York state -- something that would be an entirely unexpected statutory reading."). In making its argument, Fandango conceded that the NYCAL does not have an express provision limiting its application to "sales" of tickets to venues in New York, but instead argued the NYCAL's geographic limit applicable to ticket "resales" should be extended to apply to ticket "sales." *Id.* pp. 5-8 (NYCAL "Article 25 does not expressly define the term 'sale' or the phrase 'sale of tickets.' It does, however, implicitly define the scope of the term 'sale' when defining 'resale.'"). In contrast, in its Reply Fandango argues, in an attempt to assert that it is not "immuniz[ing] itself from liability to consumers," that New York's General Business Law (GBL) § 349(a) "provides relief to … out-of-state [consumers where the] transaction was consummated on a website with a broad New York choice-of-law clause." ECF No. 19, pp. 5-6 (citing *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013)).

1

Fandango's above new argument that GBL § 349(a) applies to its transactions with consumers contradicts its prior suggestion that the transactions occurred wholly outside New York (*see* ECF No. 9, pp. 5, 7-8) and is inconsistent with its argument that application of the NYCAL here would be "plainly unconstitutional." ECF No. 19, p. 3. As Fandango concedes (*see* ECF No. 19, pp. 5-6), New York's GBL § 349(a) includes an express clause which limits its territorial reach to transactions "in this state." N.Y. Gen. Bus. Law § 349(a) ("Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service **in this state** are hereby declared unlawful."); *see also* N.Y. Gen. Bus. Law § 350 ("False advertising in the conduct of any business, trade or commerce or in the furnishing of any service **in this state** is hereby declared unlawful.") (emphasis added). In contrast, the NYCAL has no such limiting clause with respect to ticket "sales," which are the only type of transactions at issue here. Fandango's assertion that GBL §349(a) applies to its transactions with consumers located outside New York because its "broad New York choice-of-law clause 'give[s] rise to a plausible inference that the allegedly deceptive transaction occurred in New York, and therefore that the protection of GBL § 349 extends to the named plaintiffs'" ECF No. 19, p. 6 (quoting *Gutierrez v. Lemonade, Inc.*, No. 21-cv-7070 (JGK), 2022 U.S. Dist. LEXIS 142015, at *9, 2022 WL 3214852, at *3 (S.D.N.Y. Aug. 9, 2022)), likewise supports application of the NYCAL to those same transactions. Those "transaction[s] w[ere] consummated on a website with a broad New York choice-of-law clause," ECF No. 19, p. 6, and the NYCAL claims involving "sales" are not expressly limited territorially. This interpretation of the NYCAL does not mean that the New York legislature was attempting to "to regulate every venue in the nation" as Fandango contends it would. *See id.*, p. 3. Rather, it simply means that the NYCAL applies to Fandango's online sales because Fandango affirmatively required the application of New York law to its transactions and, as Fandango now asserts, the

2

transactions themselves certainly were not wholly outside New York. *Cf. People v. Concert Connection*, 211 A.D.2d 310, 319, 629 N.Y.S.2d 254, 259 (App. Div. 2nd Dept. 1995) (rejecting commerce clause challenge where "Article 25 of the Arts and Cultural Affairs Law regulates evenhandedly and does not seek to regulate activity that occurs *wholly outside* the State . . . .") (emphasis added). Accordingly, NYCAL's prohibition on drip pricing applies to Fandango's online ticket sales, without restriction to the location of the venue. See NYCAL § 25.07(4) (requiring that "*[e]very* operator or *operator's agent* of a place of entertainment*, . . . or platform that facilitates the sale . . . of tickets* . . . disclose the total cost of the ticket, inclusive of all ancillary fees" so that "[t]he price of the ticket shall not increase during the purchase process") (emphasis added).

## II.    Fandango's Reliance on *Morales v. SportsEngine, Inc.* Is Misplaced

Fandango cites a new case in its Reply, *Morales v. SportsEngine, Inc.*, No. 1:24-cv-02971-JGLC, Dkt. 40, 2025 U.S. Dist. LEXIS 182209 (S.D.N.Y. Sept. 17, 2025), issued the same day it filed its Reply. Fandango relies on the *Morales* case in an attempt to argue that (i) Fandango's choice of law clause, which chooses New York, precludes Plaintiff from bringing an Illinois Consumer Fraud Act claim, ECF No. 19, pp. 4-5[1], and (ii) a GBL claim, which it concedes is generally applicable to its transactions, would nonetheless not be available under the facts of this case because Plaintiff could not establish deception "where a fee added later in a transaction process was disclosed to Plaintiffs … before they complete the transaction." *Id.* at n.4. Fandango's argument fails in both respects.

---

[1]    Notably, the *Morales* case further supports Plaintiff's arguments above, *see* §I *supra*, that NYCAL should be applied to transactions outside of New York. *See Morales*, at 5 (recognizing New York's GBL could apply to transactions made in the states of California, Arkansas and Massachusetts).

3

As to Fandango's first point, Plaintiff rests on her Opposition to Fandango's Motion to Dismiss, which demonstrates that applying Fandango's choice of law provision to bar Plaintiff's ICFA claim would be fundamentally unfair and violate constitutional principles afforded to Plaintiff and putative class members. *See* Plaintiff's Opposition, ECF No. 17 at pp. 16-20. Nothing in the *Morales* case undercuts Plaintiff's arguments because like the cases Fandango cited in its opening brief, the *Morales* case also did not consider the implications of the ICFA's nonwaiver provision.

On the second issue, Fandango contends that *Morales* rubber stamps its bait-and-switch purchase flow – which starts with displaying to consumers a lower ticket price which it then later increases with a processing fee when consumers go to checkout. The *Morales* court, however, did not mention the Federal Trade Commission ("FTC"), let alone address the FTC's specific findings as it described in 2023 that "[p]ricing structures that do not initially disclose the total cost of a good or service[, but instead advertise a lower cost to consumers that is ultimately inflated by mandatory charges] are deceptive *even if the total cost is disclosed at some point during the transaction*." ECF No. 17 at p.3 (quoting 88 Fed. Reg. at 77432) (emphasis added). Instead, the *Morales* decision relied on a case from over thirty years ago to conclude that there simply "can be no deception when the purchasers know they are paying the Fee and when they have an opportunity to not complete the transaction." 2025 U.S. Dist. LEXIS 182209, at *13-14 (citing *Sands v. Ticketmaster-New York, Inc.*, 207 A.D.2d 687, 616 N.Y.S.2d 362, 363 (1994)). In the three decades since *Sands* was decided, not only have regulators and legislators recognized the deception and harm that results from drip pricing (*see* ECF No. 17 at pp.2-4), the New York Court of Appeals when considering legislation intended to prevent another misleading pricing practice, explicitly described such legislation as aiming to prohibit a form of "deceptive marketing." *See Expressions*

4

*Hair Design v. Schneiderman*, 32 N.Y.3d 382, 390-93 (NY 2018) (describing aims of Federal and New York state statutes that sought to "avoid the duping of customers by posting or tagging low prices that turn out to be available for cash purchases only"); *see also id.* at 392 ("the problem the statute aimed to confront was that consumers should not face 'unannounced price increases at the point of sale' and should be able to 'depend on advertised . . . prices'") (quoting Mem of Associate Counsel, NY St Consumer Protection Board, Bill Jacket, L 1984, ch 160 at 10).  This "duping" and "luring" of consumers with a lower advertised price that turns out not to be available at check out is analogous to the deception Fandango engages in here and to the FTC's findings that such "misleading door openers" are deceptive.  See ECF No. 17 at pp.3-4.  The *Morales* court did not consider the FTC's rationale (based on numerous studies) for why drip pricing is a deceptive practice and results in higher prices, increased search costs and reduced competition.  See ECF No. 17, pp. 2-4.  Consequently, *Morales* is inapplicable to whether Plaintiff may bring claims in the context of practices that the FTC, New York legislators, and New York's highest court have recognized as deceptive marketing, like Fandango's drip pricing scheme.

## CONCLUSION

For all the foregoing reasons and those set forth in Plaintiff's Opposition to Fandango's Motion to Dismiss, Plaintiff respectfully requests the Court deny Fandango's Motion to Dismiss.

Dated:  September 26, 2025                    Respectfully submitted,

**VOZZOLO LLC**

By:/s/ *Antonio Vozzolo*

Antonio Vozzolo
Andrea Clisura
499 Route 304
New City, New York 10956
Telephone: (201) 630-8820
Email: avozzolo@vozzolo.com
            aclisura@vozzolo.com

 - and -

345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820

Kenneth T. Goldstein
(admitted *Pro Hac Vice*)
Matthew G. Norgard
(admitted *Pro Hac Vice*)
**The Law Office of Kenneth T. Goldstein, PLLC**
20 North Wacker Drive, Suite 1006
Chicago, Illinois 60606
Telephone: (312) 606-0500
Email: ken@krislovlaw.com
            mnorgard@krislovlaw.com

Michael R. Karnuth (*Pro Hac Vice* to be filed)
**The Law Offices of Michael R. Karnuth**
203 N. LaSalle St., Suite 2100
Chicago, Illinois 60601
Telephone: (312) 391-0203
Email: mike@karnuthlaw.com

***Attorneys for Plaintiff and the Proposed Classes***

**Certificate of Compliance with Word-Count Limit**

      This document complies with the word-count limitation of Local Rule 7.1(c) because, excluding the parts of the document that are exempted, this document contains 1589 words. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft 365) used to prepare the document.

      By:/s/ *Antonio Vozzolo*